### SWEENEY v. DAVIS et al. (No. 1012.)*

(Court of Civil Appeals of Texas. Amarillo. June 7, 1916. Rehearing Denied Oct. 4, 1916.)

1. BILLS AND NOTES ⬅➡518(1) — ACTION — EVIDENCE—SUFFICIENCY.

In an action by the indorsee against the maker and indorser of a note showing on its face that as collateral security therefor the maker had delivered to the payee shares of capital stock of a trust company, evidence *held* to show that the note was given in payment for capital stock purchased of an agent of the trust company, though payable to an investment company which was promoting the sale of the trust company's stock.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1816, 1817, 1819, 1820; Dec. Dig. ⬅➡518(1).]

2. BANKS AND BANKING ⬅➡314 — INVESTMENT COMPANIES—AGENCY OF AGENT—EFFECT.

The agent of an investment company, which was itself an agent engaged in promoting the sale of the capital stock of a trust company, was the agent of the trust company as well as of the investment company.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1218; Dec. Dig. ⬅➡314.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by A. J. Davis against N. H. Sweeney and Mark Logan. Judgment for plaintiff against both defendants, and defendant

Sweeney appeals. Judgment against defendant Sweeney reversed and remanded, and judgment against defendant Logan affirmed.

Martin, Kinder, Russell & Zimmermann, of Plainview, for appellant. Veale & Lumpkin and A. M. Mood, all of Amarillo, and Chandler & Pannill, of Stephenville, for appellees.

HENDRICKS, J. A. J. Davis, the appellee herein, sued the appellant, N. H. Sweeney, and Mark Logan, alleging the execution and delivery of a certain $1,000 note, by Sweeney June 10, 1913, payable to H. H. Cooper, indorsed by Cooper without recourse to the defendant Logan, and by the defendant Logan to him (Davis) before maturity. The particular note sued upon was in reality a renewal note, in substitution of a previous note executed by Sweeney, October 10, 1912, for the same amount to the Amarillo Securities Investment Company, payable eight months after date. This original note contained the following clause:

"As collateral security for the foregoing note and other notes, if any, this day given for stock hereinafter named, have delivered to the Amarillo Securities Investment Company the following securities: Fifty shares of the capital stock of the Bankers' Trust Company of Amarillo, Texas."

Sweeney answered that the Amarillo Securities Investment Company was a corporation organized for the purpose solely of promoting the Bankers' Trust Company of Amarillo, Tex., and that said corporation, through its agents, sold or took stock subscriptions to the capital stock of said Bankers' Trust Company of Amarillo, and that when the stock had been sold the Bankers' Trust Company was incorporated and organized and took over the assets and contracts of the Amarillo Securities Investment Company; that one Wrather, an agent of the Amarillo Securities Investment Company, solicited him to purchase the particular shares of stock in the Bankers' Trust Company, making certain alleged fraudulent representations, not necessary to state herein; that the only consideration for the note was a certificate representing the 50 shares of the capital stock of said Bankers' Trust Company, organized under the laws of Arizona and granted a permit to do business in the state of Texas; and that said stock·was issued and delivered to the defendant for the note.

[1, 2] It is to be noted that the original note was executed October 10, 1912, and the renewal note executed June 10, 1913. It is shown that a certificate· of stock, calling for 50 shares of the capital stock of the Bankers' Trust Company, signed by Mark Logan, as president, and Carl C. Hardin, as secretary, with their signatures and the corporate seal affixed the 28th day of June, 1913, was delivered about July 15, 1913, to the defendant Sweeney. The Bankers' Trust

Company on the latter date wrote Sweeney at Silverton, Tex., inclosing the particular certificate of stock, which was received by him. Sweeney testified that he gave the original note for the stock in the Bankers' Trust Company, and said that he took the stock "on the consideration that I was to borrow money on cattle loans"; that Wrather made other representations to him as to certain persons to be stockholders in the company, not necessary to detail; that the following March he talked to Mark Logan, the president of the Bankers' Trust Company, in regard to the loan (meaning the one promised by Wrather), at a cattle convention in Amarillo, and again, at about the time of the maturity of the note, he discussed the matter with Logan; and that at both times Logan stated that they were not ready to make the loan, but would be ready in a short time.

It is inferable from the record, that Wrather, in soliciting the purchase of the stock by Sweeney, and in making his agreement for the loan of money, was representing the Bankers' Trust Company; and, excluding the fact of the note having been made to the Amarillo Securities Investment Company, the trade for the issuance and delivery of the stock for the note, was between the Trust Company and Sweeney. If you exclude from consideration the fact that the Securities Investment Company was the payee in the note, the trade between Wrather, representing the Bankers' Trust Company, for the issuance and delivery of the stock of that company to Sweeney for the note, would of itself be void. The note, on account of the collateral securities clause, implies a delivery of stock during the life of the note. The stock was actually issued and delivered direct by the Bankers' Trust Company to Sweeney, and could not have been for anything else than in consideration of the execution and delivery of the note to the Investment Company. The Investment Company is not shown to have paid for, nor owned, any stock in the Bankers' Trust Company, unless you deduce that conclusion from the fact that their name is the payee in the note. In so far as the record shows, except the bare fact of the note having been made payable to the Investment Company, there was no trade made between that company and Sweeney, but the same was made between Wrather (inferably as the representative of the Bankers' Trust Company) and Sweeney, for the sale, issuance, and delivery of the stock to him. As we said in the case of Crawford v. Davis, 188 S. W. 436, this day decided:

"It is true the defendant pleaded that Wrather was the agent of the Securities Company; it is also pleaded, however, that the Securities Company was the agent, promoting the Bankers' Trust Company; and it would follow from the pleading that Wrather was the agent of the latter company, as well as the former."

When you consider the inference of agency by Wrather of the Trust Company, and the trade seemingly made for and by that company for the sale of the stock to Sweeney, and the direct delivery by that company of the stock to him, for the note, without any other participation in the trade by the Investment Company than the fact of being the payee in the note, coupled with the renewed promises of Logan, the president of the Trust Company, in regard to the loan of money, rather suggests, than negatives, the idea that the Investment Company was merely an instrument in the trade holding the legal title to the note.

For the additional reasons given in the case of Miner Crawford v. A. J. Davis (No. 1013) 188 S. W. 436, this day decided, to which we refer, we think the case as to Sweeney should be reversed and remanded. The judgment against Mark Logan, in favor of A. J. Davis, will be affirmed, but otherwise reversed for a new trial. Affirmed in part, and reversed and remanded in part.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.